CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
Christopher L. Blank (SBN 115450)
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 250-4600
Email: chris@chrisblanklaw.com

Attorney for Defendant ANDREW S. DAVIS

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA -SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor. | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No. 8:20-ap-01146-SC |
| RICHARD A. MARSCHACK, Chapter 7 Trustee of the Estate of EAGAN AVENAITTI, LLP<br><br>Plaintiff,<br><br>v.<br><br>ANDREW S. DAVIS, an individual<br><br>Defendant. | **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: October 20, 2020<br><br>Hearing Set For<br><br>Date:  May 25, 2022<br>Time:  10:00 AM<br>Hearing Judge:  Hon. Scott Clarkson<br>Location:  Virtual – Via Zoom.gov |

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEY(S) OF RECORD:**

**PLEASE TAKE NOTICE** that on May 25, 2022, at 10:00 a.m. virtually via Zoom.gov in Courtroom 5C of the above-entitled court, located at 411 West Fourth Street, Santa Ana, CA 92701, Defendant Andrew S. Davis, an individual ("Movant" or "Defendant") will and hereby moves for an order granting Summary Judgment in this adversary action (the "Motion").  This Motion is based on the attached Memorandum of Points and Authorities, Declarations, Separate

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Statement of Undisputed Facts, Proposed Judgment, and such other matter as may properly come before the Court.

**Your rights may be affected.**  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)

**Deadline for Opposition Papers:**  This Motion is being heard in compliance with LBR 7056-1.  If you wish to oppose this Motion, you must file a written response with the Court in compliance with LBR 7056-1 and serve a copy of it upon the Movant or Movants' attorney at the addresses set forth above no less than twenty-one (21) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

**Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:**  The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.  Specifically, the undersigned called the judge's calendar clerk and obtained this hearing date.

Dated: April 13, 2022

CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC

By: _/s/ Christopher L. Blank_
CHRISTOPHER L. BLANK
Attorney for Defendant Andrew S. Davis

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant, Andrew Davis is a professional race car driver.  In late 2012, he was hired by Michael Avenatti to drive Avenatti's race cars in the 2013 American Le Mans Series ("ALMS").  Davis's contract to drive for Avenatti is attached as part of Defendant's Compendium of Exhibits ("Compendium") as **Exhibit 1**.  The contract provides for a payment to Davis of $100,000.00 in installments for his services for the 2013 ALMS.  Davis fulfilled his part of the contract by driving for Avenatti in various races during the 2013 ALMS.  Davis received wire transfers of $60,000.00 for his services from an account held in the name of Eagan Avenatti LLP ("EA") at California Bank and Trust, with an account number ending in 8461.  Davis received $10,000.00 on March 11, 2013, $20,000.00 on March 14, 2013, and $30,000.00 on September 3, 2013.  These are the transfers that the Trustee seeks to avoid ("Transfers").  Bank statements showing receipt of these funds by Davis are attached as part of the Compendium as **Exhibit 2**.

There is a difference between spending money and hiding assets.  Spending money is normal business activity.  Hiding assets is not.  To win this case, the Trustee must prove that EA made these specific Transfers with actual intent to hinder, delay or defraud creditors.  The Trustee needs to prove more than that EA has been embroiled in heated litigation over the last decade.  The Trustee needs to prove more than that Michael Avenatti had an opulent lifestyle at one time.  The Trustee needs to prove more than that Michael Avenatti is facing criminal prosecutions and convictions.  The Trustee needs to prove more than that EA paid some of Michael Avenatti's personal expenses.  The Trustee must prove that EA, a highly successful law firm with millions of dollars of annual revenue, paid these specific expenses, $60,000.00 to a race car driver, with intent to hinder, delay or defraud creditors.  The Trustee cannot meet that burden.

Constructive fraud is not an issue in this case because the Transfers were made long before the 4-year look back period that applies to such claims.  To prevail, the Trustee must

prove actual fraudulent intent, and the Trustee must negate Defendant's good faith defense under state law.  To negate the good faith defense, the Trustee must show that Defendant participated in fraudulent activity, or was somehow culpable for some fraudulent activity, perpetrated by the Debtor, and that Defendant did not provide reasonably equivalent value for the Transfers.  To prevail, the Trustee must also negate Defendant's statute of limitations defense and prove that the Transfers were made within the period of vulnerability specified under applicable law.

## II.      STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the record indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCivP Rule 56(a).  The burden of proof is on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to a judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248-249 (1986).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Id.*  Once the moving party has met its burden, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts."  The non-moving party "must identify specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.* 475 U.S. 574, 586 (1986).

The United States Supreme Court in the landmark case *Celotex Corporation v. Catrett*, 477 U.S. 317, 91 Lawyers Ed. 2d 265, 106 Sup. Ct.2548 (1986), held that **the defendant does not need to supply any admissible evidence at all pertaining to the merits of the case in order to prevail.**  Instead, under *Celotex,* the defendant merely needs to demonstrate that the Plaintiff does not have admissible evidence to support each and every essential element of its claim. The burden then shifts to the Plaintiff to supply such admissible evidence of each and every element of its claim. If the Plaintiff fails to do so, the Plaintiff loses.

## III.     ARGUMENT

### a.  The Trustee Cannot Prove that the Transfers Were Made with Actual Intent to Hinder, Delay or Defraud Creditors.

1    Plaintiff, Richard Marshack is the Trustee for the Bankruptcy estate of Eagen

2    Avenatti, LLP.  He has alleged that the Transfers are avoidable under 11 U.S.C. Section 544(b),

3    the Strong-Arm Power.  The Trustee alleges that various creditors with allowable claims had the

4    ability to avoid the Transfers under California's Uniform Avoidable Transactions Act.  Civil

5    Code Sections 3439.04(a), and 3439.07.  The action fails because the Trustee cannot provide

6    admissible evidence to support a prima facie case for avoidance of the Transfers as made with

7    actual intent to hinder, delay or defraud creditors.

8    The following indented paragraphs are quoted from this Court's Order

9    Granting Motion for Summary Judgment in *Marshack v. Aledmi (In re Eagen Avenatti, LLP)*

10   Case No. 8:20-ap-01049-SC, entered December 22, 2022, [Docket 131 in that adversary action].

11   Page 8, line 19 through page 12, line 12.

### c.    Actual Fraudulent Transfer Standards

12   A trustee's avoidance powers are laid out discretely under 11 U.S.C. §

13   544, which generally provides that a trustee may avoid transfers of interest made

14   by the debtor that are voidable by a creditor to the estate under applicable state

15   law. 11 U.S.C. § 544(b)(1).

16   California's Uniform Voidable Transactions Act ("UVTA") (formerly

17   the Uniform Fraudulent Transfer Act ("UFTA")) offers two theories under which

18   a debtor's transfer may be voided: actual fraud or constructive fraud. [Footnote

19   omitted.] *See* Cal. Civ. Code §§ 3439. The Trustee seeks to avoid the Transfers

20   based on the theory that the Transfers were actual fraudulent transfers; therefore,

21   it is the Trustee who bears the burden of proof on the § 3439.04(a) claims. *See*

22   Cal. Civ. Code § 3439.04(c). Pursuant to California Civil Code § 3439.04(a),

23   "actual fraud" occurs where, *inter alia*, the transfer was made "[w]ith actual intent

24   to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code §

25   3439.04(a). Specifically, Cal. Civ. Code § 3439.04(a) states:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    (a) A transfer made or obligation incurred by a debtor is voidable as to a

creditor, whether the creditor's claim arose before or after the transfer

was made or the obligation was incurred, if the debtor made the

transfer or incurred the obligation as follows:

    (1) With *actual intent* to hinder, delay, or defraud any creditor of the

debtor.

    (2) *Without receiving a reasonably equivalent value* in exchange for

the transfer or obligation, and the debtor either:

    (A) Was engaged or was about to engage in a business or a

transaction for which the remaining assets of the debtor were

unreasonably small in relation to the business or transaction.

    (B) Intended to incur, or believed or reasonably should have

believed that the debtor would incur, debts beyond the debtor's

ability to pay as they became due.

Cal. Civ. Code § 3439.04(a) (emphasis added).

       When the debtor is an entity, the relevant intent is the intent of the

individual(s) in control of the entity. See, e.g., *Uecker v. Ng (In re Mortg. Fund

'08 LLC)*, 2013 Bankr. LEXIS 3385, at *16 (Bankr. N.D. Cal. Aug. 14, 2013). In

determining whether the requisite intent existed in the mind of the individual in

control of the entity, the court should consider "all of the relevant circumstances

surrounding the transfer." *Ezra v. Seror (In re Ezra)*, 537 B.R. 924, 931 (9th Cir.

BAP 2015). Additionally, "the statute provides that a court may consider, inter

alia, '[w]hether the transfer or obligation was to an insider; . . . [w]hether the

debtor retained possession or control of the property transferred after the transfer;

. . . [w]hether the transfer was of substantially all the debtor's assets; . . . [and

w]hether the value of the consideration received by the debtor was reasonably

equivalent to the value of the asset transferred or the amount of the obligation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

incurred.'" *Wimbeldon Fund, SPC (Class TT) v. Graybox, LLC,* No. 2:15-cv-6633-CAS (AJWx), 2019 U.S. Dist. LEXIS 89988, at \*33 (C.D. Cal. May 29, 2019) (citing Cal. Civ. Code § 3439.04(b)). The foregoing are commonly described as "badges of fraud."

As noted by the Ninth Circuit Bankruptcy Appellate Panel, the "badges of fraud" contained in Cal. Civ. Code § 3439.04(b) are not exclusive, and the Court is not mandated to draw an inference of fraud because any particular number of the badges are present.

> The UFTA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent. A trier of fact is entitled to find actual intent based on the evidence in the case, even if no 'badges of fraud' are present. Conversely, specific evidence may negate an inference of fraud notwithstanding the presence of a number of 'badges of fraud.'

*Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007) (affirmed in part and appeal dismissed in part by *Beverly v. Wolkowitz (In re Beverly)*, 2008 U.S. App. LEXIS 26386 (9th Cir. 2008)).

Proof of a legitimate business or other reason for a transfer can be considered by the court to negate any alleged "badges of fraud," and defeat an intentional fraudulent transfer claim, including on summary judgment. See, e.g., *In re J.R. Deans Co., Inc.*, 249 B.R. 121, 139 (Bankr. D.S.C. 2000) (granting summary judgment on an intentional fraudulent transfer claim in favor of the defendant based on evidence that the transfers were made for good business reasons, i.e., paying rent for leased premises); *In re Spitko*, 2007 WL 1720242, at \*14–15 (Bankr. E.D. Pa. 2007) (granting summary judgment on an intentional fraudulent transfer claim in favor of the defendant based on evidence that the transfers were to pay for legal services rendered to companies owned by the

debtor); *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 382–83 (S.D.N.Y. 2003),

aff'd, 99 F. App'x 274 (2d Cir. 2004) (stating that "[n]o reasonable jury could find

that there was anything suspicious or questionable about the transfers here.

Although the transfers were not in the ordinary course of business, there were

legitimate business reasons for them."); *In re Licking River Mining, LLC*, 603

B.R. 336, 382 (Bankr. E.D. Ky. 2019), as amended (July 19, 2019) (stating that

summary judgment in favor of the defendant is appropriate where defendant

shows "'countervailing proof . . . that the transfer or conveyance was made fairly

and without intent to defraud the creditor.'").

Whether a debtor received "reasonably equivalent value" for a transfer

is both an element under the Cal. Civ. Code § 3439.04(a) avoidance statute, and a

commonly considered badge of fraud. "Reasonably equivalent value is the value

of the property on the date of the transfer from the perspective of the creditors."

*Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010).

"Courts may consider the fair market value or what would be the fairly equivalent

value of the property, taking into consideration all of the specific circumstances of

each case affecting the value of the asset." *Id*. "It is well settled that 'reasonably

equivalent can come from one other than the recipient of the payments, a rule

which has become known as the indirect benefit rule.'" *In re N. Merch., Inc.*, 371

F.3d 1056, 1058 (9th Cir. 2004) (citing and quoting *In re Jeffrey Bigelow Design

Group, Inc.*, 956 F.2d 479, 485 (4th Cir. 1992)). The indirect benefit rule, and its

impact on the Court's reasonably equivalent value analysis, has been further

explained as follows:

> It is well settled that reasonably equivalent value can come from one other
> than the recipient of the payments, a rule which has become known as the
> indirect benefit rule." *N. Merch.*, 371 F.3d at 1058 (internal quotations and
> citation omitted). "'If the consideration given to the third person otherwise

has ultimately landed in the debtor's hands, or if the giving of the

consideration to the third person otherwise confers an economic benefit

upon the debtor, then the debtor's net worth has been preserved, and [the

statute] has been satisfied—provided, of course, that the value of the

benefit received by the debtor approximates the value of the property or

obligation he has given up.'" *Id.* at 1058–59 (alteration in original)

(quoting *Rubin v. Mfrs. Hanover Trust Co.,* 661 F.2d 979, 991–92 (2d

Cir.1981)). If the debtor receives such reasonably equivalent value, "then

the transaction has not significantly affected his estate and his creditors

have no cause to complain." *Rubin,* 661 F.2d at 991.

*In re Flashcom, Inc.*, 503 B.R. 99, 117-18 (C.D. Cal. 2013), *aff'd*, 647 F.App'x

689 (9th Cir. 2016).

In fact, "[a] debtor receives reasonably equivalent value for the

repayment of loan proceeds it receives whether or not it is contractually obligated

to repay the loan." See *In re Jeffrey Bigelow Design Grp., Inc.,* 956 F.2d 479 (4th

Cir. 1992) (cited with approval in *In re N. Merch., Inc.,* 371 F.3d 1056, 1059 (9th

Cir. 2004)).

Turning to the facts of this case, for many years before and after the Transfers,

Michael Avenatti was a well-known participant in the sport of Motor Racing.  Throughout the

years before and after the Transfers, Avenatti marketed his services as an attorney while

participating in Motor Racing.  Avenatti used his participation and notoriety in that sport to gain

access to potential clients and potential referral sources for clients.  EA actively participated in

Avenatti's involvement in the sport of Motor Racing by purchasing a Porsche GT3 and

Mercedes-AMG GTE through GB Autosport, LLC, a company owned by Avenatti, and another

Porsche GT3 race car on Avenatti's behalf.

Davis's services as a professional race car driver were necessary to and

facilitated Avenatti's participation in Motor Racing and provided direct and indirect benefits to

him and his law firm.  The services Davis provided were reasonably equivalent in value to the

Transfers Davis received for those services.  Davis's contract with Avenatti and his receipt of the

Transfers were ordinary course of business transactions.

The facts relevant to the Badges of Fraud analysis include:  Davis had no

knowledge that Avenatti or his law firm were in any legal or financial trouble during the time

that Davis drove for Avenatti.  Davis has no connections to Avenatti other than as a driver for his

team during the 2013 ALMS.  Davis has no connections to Eagen Avenatti, LLP ("EA") other

than as the recipient of the Transfers in payment for his services as a driver.  Davis is not an

insider with respect to EA.  EA did not retain possession of the funds that were paid to Davis for

his services as a driver.  Davis did not conceal the payments made to him by EA.  EA did not

conceal the payment made to Davis.  Davis had no knowledge that EA had been sued or

threatened with suit at the time of the Transfers,

The $60,000.00 Davis received by way of the Transfers does not appear to

have been all or substantially all of EAs assets.  To the contrary, the Transfers appear to be quite

small compared to the tens of millions of dollars per year that passed through the accounts of

EA.  EA did not abscond before or after the Transfers.  Davis had and has no knowledge that EA

ever removed or concealed assets.  By satisfying a debt that Avenatti owed to Davis, EA

received reasonably equivalent value for the Transfers as is explained in more detail in Section

**III.c** below.

Furthermore, Davis had no knowledge or reason to believe that EA was

insolvent at the time of the Transfers or was rendered insolvent as a result of the transfers.  Davis

had no knowledge or reason to believe that the Transfers occurred shortly before or shortly after

EA incurred any substantial debt.  Davis was not a lienor of EA at the time of the Transfers and

the $60,000.00 Davis received by way of the Transfers was not an essential business asset of EA.

Based on the totality of the circumstances, EA had a valid business reason for

supporting Avenatti's participation in the sport of Motor Racing.  EA had a valid business reason

for paying Davis to drive Avenatti's race car.  Davis provided reasonably equivalent value for

the payments he received from EA.  The Trustee has failed to show that the Transfers were made with actual intent to hinder, delay or defraud EAs creditors.

### b. The Trustee Cannot Defeat Davis's Good Faith Defense.

The following indented paragraphs are quoted from this Court's Order Granting Motion for Summary Judgment in *Marshack v. Aledmi (In re Eagen Avenatti, LLP)* Case No. 8:20-ap-01049-SC, entered December 22, 2022, [Docket 131 in that adversary action]. Page 17, line 14 – page 18, line 5.

### f. Good Faith Defense Standards

Defendants assert they are good faith transferees. There exists a complete defense to the avoidance of actual fraudulent transfers for good faith transferees. "A transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." Cal. Civ. Code § 3439.08. *See also Annod Corp. v. Hamilton & Samuels*, 100 Cal.App.4th 1286, 1302 (2002) ("In their motions for summary judgment, the partners established a complete defense by showing the transfers were made in good faith and for reasonably equivalent value. In other words, they presented evidence that would require the trial court not to find fraudulent intent more likely than not. [Plaintiff] failed to demonstrate the existence of a triable issue of material fact as to the partners' defense. Consequently, the trial court properly granted summary judgment.")

"[A] transferee cannot benefit from the good faith defense if that transferee had fraudulent intent, colluded with a person who was engaged in the fraudulent conveyance, actively participated in the fraudulent conveyance, or had *actual knowledge of facts showing knowledge of the transferor's fraudulent intent*." *Nautilus, Inc. v. Yang*, 11 Cal. App. 5th 33, 37 (2017) (emphasis in

original) (where the Court concluded that the arguable badges of fraud relied upon

by Plaintiff appeared "normal, not fraudulent, for reverse mortgage lending.").

In this case, Davis has testified that by receiving the Transfers, he did not act

with fraudulent intent, and the Trustee cannot produce evidence to the contrary.  Davis has

testified that he has never colluded with EA, and the Trustee cannot produce evidence to the

contrary.  Davis has testified that he has never participated in any allegedly fraudulent scheme

with EA, and the Trustee cannot produce evidence to the contrary.  Davis has testified that he has

never had any actual knowledge of any fraudulent intent on the part of EA with respect to the

Transfers, and the Trustee cannot produce evidence to the contrary.  Davis has testified that he

has never had any actual knowledge of any evidence, or reason to suspect, that the Transfers

were made with fraudulent intent by EA, and the Trustee cannot produce evidence to the

contrary.  Davis has testified that he always acted in good faith with respect to his services as a

race car driver for Avenatti and his receipt of the Transfers from EA, and the Trustee cannot

produce evidence to the contrary.  As explained more completely below, the evidence shows that

Davis provided reasonably equivalent value to Avenatti for the payments made by the Transfers

from EA, and EA had a business reason for supporting Avenatti's Motor Racing activities and

benefitted from Davis's services paid for by the Transfers.

### c.  EA has Received Reasonably Equivalent Value for the Transfers.

California Civil Code Section 3439.03 sets out the definition of value for the

purposes of the Uniform Voidable Transfers Act.  It states:

Value is given for a transfer or an obligation if, in exchange for the

transfer or obligation, property is transferred or an antecedent debt is

secured or satisfied, but value does not include an unperformed

promise made otherwise than in the ordinary course of the promisor's

business to furnish support to the debtor or another person.

EA received reasonably equivalent value for the Transfers because the

Transfers supported Avenatti's participation the sport of Motor Racing.  Throughout the years

before and after the Transfers, Avenatti marketed his services as an attorney while participating in Motor Racing.  Avenatti used his participation and notoriety in that sport to gain access to potential clients and potential referral sources for clients.  EA supported Avenatti's participation in Motor Racing not just by paying Davis for his driving, but also by purchasing race cars used by Avenatti in the sport.  The question isn't "did Motor Racing garner any clients or revenue for EA?"  When a company buys a billboard ad, the question isn't "did the ad generate clients or revenue", the question is "did the billboard company display the ad that was purchased."  Here there is no question that Davis fulfilled his contractual obligations by driving Avenatti's cars in the 2013 AMLS.  He provided the value that Avenatti bargained for and the benefit that Avenatti sought for EA.

There is an additional way that EA obtained reasonably equivalent value for the Transfers.  Avenatti was EA's majority owner, managing partner and a major generator of EA's revenue.  Avenatti was entitled to substantial compensation for his services to EA, as well as 75% of any profits earned by EA.  When EA paid a personal expense for Avenatti, it satisfied EA's obligation to compensate Avenatti for his services to EA.  Otherwise, EA's payment of a personal expense for Avenatti gave rise to a claim for subrogation or restitution against Avenatti to the extent that the Transfer overcompensated Avenatti, and the subrogation or restitution provided reasonably equivalent value for the Transfers.

The Trustee's complaint is filled with impertinent and irrelevant allegations about Avenatti's alleged wrongdoing and criminal activity.  The Trustee appears to theorize that because Avenatti did bad things and lived an opulent lifestyle, individuals like Davis, and small businesses like Trackside and Competition Motorsports (Faieta's business) should bear the burden for Avenatti's misdeeds..

Living an opulent lifestyle may be offensive to some, but it is not illegal.
Avenatti ran a successful law practice for more than a decade.  He was entitled to be richly compensated for his work.  His services provided reasonably equivalent value for his

compensation.  Receiving compensation in the form of fringe benefits or payment of personal expenses is not illegal.

The Trustee appears to contend that any personal expenses paid by EA for the benefit of Avenatti in 2013 or later, resulted in overpayment for the reasonable value of his services, i.e. EA received less than reasonably equivalent value for such payments.  The burden is on the Trustee to prove that the Transfers were for less than reasonably equivalent value since this is part of the Trustee's *prima facie* case.  However, the Trustee has no proof of that Avenatti was overcompensated in 2013 or that the Transfers were part of that overcompensation.  Without that proof, the Trustee's case fails.

For the sake of argument, one might ask what if the Trustee could prove that Avenatti was overcompensated in 2013?  What if the Trustee could prove that Avenatti caused the Transfers to be made for his benefit, but he was entitled to no such benefit from EA.  I.e., what if the Trustee could prove that Avenatti essentially embezzled money from EA by causing EA to pay his personal expenses.  If proven, such payments must have given rise to a subrogation claim against Avenatti, or a restitution claim for such overpayments or embezzlements.  These claims would be assets received by EA in exchange for the payments made.  They would provide reasonably equivalent value for the payments unless the Trustee can also prove that Avenatti was incapable of satisfying any such subrogation or restitution claims.  The Trustee has no such proof.

> *In General.* Equitable subrogation is the right to recover from the debtor-obligor,
> e.g., a surety pays the principal debtor's obligation to the creditor, and in equity is
> substituted for the creditor or subrogated to the creditor's rights against the debtor.

13 Witkin, Summary 11th Equity § 204 (2021).

> Scope of Doctrine. The doctrine is not limited to sureties and quasi-sureties. "As now
> applied, it is broad enough to include every instance in which one person, not acting as a
> mere volunteer or intruder, pays a debt for which another is primarily liable, and which in
> equity and good conscience should have been discharged by the latter. Its use to enforce

1

restitution in order to prevent unjust enrichment has elsewhere been pointed out."

2

[Citations omitted.]

3

Id.

4

If EA paid a debt owed by Avenatti to a third party, such as defendants, when

5

such payment should have been paid by Avenatti, then EA would be subrogated to the rights of

6

the third party as against Avenatti, and EA would be entitled to restitution to avoid Avenatti's

7

unjust enrichment.  Those subrogation and restitution rights are assets received by EA in

8

exchange for the payment made to the third party.  Those subrogation and restitution rights

9

provide further reasonably equivalent value for the Transfers made by EA.

10

Based on the totality of the circumstances there are no genuine issues of

11

material fact with respect to the Trustee's inability (1) to show the Transfers were made with

12

actual intent to hinder, delay or defraud creditors, (2) to defeat Davis's good faith defense, and

13

(3) that EA received reasonably equivalent value for the Transfers.  As set forth below, Davis is

14

also entitled to judgment in his favor because the Trustee's claims are stale.

15

### d.  The Complaint is Untimely Pursuant to 11 U.S.C. Section 546.

16

The present bankruptcy was filed on September 13, 2019.  The complaint in this

17

action was filed on October 20, 2020, i.e., within 2 years after the order for relief in the present

18

case.  However, a prior involuntary bankruptcy was filed against the Debtor on March 1, 2017

19

(the "2017 EA Bankruptcy").  The order for relief in the 2017 EA Bankruptcy was entered on

20

March 10, 2017.  No trustee was appointed in the 2017 EA Bankruptcy, not before or after 2

21

years from the entry of the order for relief.  The 2017 EA Bankruptcy was dismissed on March

22

15, 2018, as part of a structured settlement approved by the bankruptcy court.  None of these

23

facts are disputed.

24

All of the Transfers alleged in the complaint occurred between March 11 and

25

September 3, 2013.  Any right to avoid those Transfers existed on the date the 2017 EA

26

Bankruptcy was filed.  These facts are also not disputed.

27

Section 546(a) of the Bankruptcy Code provides:

28

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of

this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first

trustee under section 702, 1104, 1163, 1202, or 1302 of this

title if such appointment or such election occurs before the

expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed

The time within which to commence avoidance actions in the 2017 EA

Bankruptcy expired at the latest on March 10, 2019, 2 years after the order for relief in that case.

Because no trustee was ever appointed in that case, or in this case prior to March 10, 2019, no

extension under Section 546(a)(1)(B) ever came into effect.  Arguably, the limitations period

actually expired when the 2017 EA Bankruptcy was dismissed on March 15, 2018, pursuant to

Section 546(a)(2).

No action to avoid the Transfers was ever commenced in the 2017 EA

Bankruptcy.  The present action to avoid the Transfers was not commenced prior to March 15,

2018.  The present action was not commenced prior to March 10, 2019.  None of these facts are

disputed.

The Ninth Circuit held in *In re Softwaire Ctr. Int'l, Inc.*, 994 F.2d 682 (9th Cir.

1993), *as amended on denial of reh'g* (Sept. 15, 1993), that a debtor in possession is "the

functional equivalent of an appointed trustee" and is subject to the two-year limitations period

commencing at the time the petition is filed.  In *In re San Joaquin Roast Beef*, 7 F.3d 1413, 1415

(9th Cir. 1993), a Chapter 11 trustee was appointed over nine months after the debtor in possession filed

its bankruptcy petition.  The case was later converted to Chapter 7, and the new trustee argued his

appointment restarted the limitations period.  The Ninth Circuit held that the statute of limitations runs

from appointment of the first trustee and applies to all subsequent trustees.  The Ninth Circuit held in *In*

*re IRFM, Inc.*, 65 F.3d 778 (9th Cir. 1995), *as amended on denial of reh'g* (Sept. 12, 1995), that even when no Chapter 11 trustee had ever been appointed, conversion to Chapter 7 did not restart the statute of limitations on avoidance actions.

On February 13, 2019, Brian Weiss was appointed by the U.S. District Court as receiver to assist in the collection of a judgment in favor of Jason Frank Law, PLC ("JFL") against EA.   The present bankruptcy case for EA was commenced by Mr. Weiss on September 13, 2019, i.e., beyond the expiration of the statute of limitations under Section 546 in the 2017 EA Bankruptcy.  If Weiss or someone else had obtained an order reopening the 2017 EA Bankruptcy on September 13, 2019, instead of filing a new bankruptcy case for EA, under the authorities cited above, the limitations period would not have been revived,  If someone had asked the Court to convert the 2017 EA Bankruptcy to chapter 7, or obtained the appointment of a trustee on September 13, 2019, the limitations period would hot have been revived.   What should the result be when, instead of (a) reopening the prior bankruptcy, or (b) seeking to convert the prior case to chapter 7, or (c) seeking appointment of a trustee, a new bankruptcy case is commenced?  This appears to be an issue of first impression in the 9th Circuit, and perhaps throughout the United States.

If appointment of a new trustee or conversion to chapter 7 does not restart the time clock, why should filing a new chapter 7 case?  Why should a trustee obtain through the back door, what could not be obtained through the front door?  Significant policies suggest that claims barred in the first bankruptcy should not be revived in the second.  Section 546, like all statutes of limitations, exists to encourage diligence by those with purported claims.  It also exists to protect potential defendants from the burden of having to defend against stale claims when their ability to produce evidence in their defense may be diminished because of the passage of time.

In the case of avoidance actions, an additional public purpose is promoted by strictly construing and applying limitations periods.  Free trade and alienation of assets is severely hampered by the possibility of avoidance actions.  The benefit of enhancing a bankruptcy estate by recovering avoidably transferred assets must be weighed against the difficulty that avoidance actions pose for the free trade and alienation of assets.  For example, typical title insurance policies will not insure against the

MOTION FOR SUMMARY JUDGMENT

effect of avoidance actions pursued by trustees or creditors.  Enforcement of the limitations periods on avoidance actions provides potential buyers with some comfort that they will not have to defend against stale avoidance claims when a seller has held title to the assets they are buying for a sufficient time.  Lax enforcement of limitations periods increases uncertainty and diminishes the value of assets and robust trade in those assets.

**e.  The Transfers Occurred Beyond the Period of Vulnerability Under State Law.**

One must distinguish between a statute of limitations, a statute of repose and a period of vulnerability.  In the context of the present action, 11 U.S.C. Section 546 sets forth the statute of limitations for the claims filed by the Trustee.  It specifies (a) the earlier of (1) the later of (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment of or election of the first trustee; or (2) the time the case is closed or dismissed.  If measured by the 2017 EA Bankruptcy case, the Trustee's complaint is not timely.  If measured by the 2019, it was filed within the limitations period of section 546.

A "period of vulnerability" defines what transfers or obligations may be avoided under a particular statute.  Under section 547 of the bankruptcy code, preferential transfers made "on or within 90 days before the date of the filing of the petition" are within the period of vulnerability.  Additionally, transfers made to insiders "between 90 days and one year before the date of the filing of the petition" are within the period of vulnerability.  Under Section 548, fraudulent transfers made "on or within 2 years before the date of the filing of the petition" are within the period of vulnerability.

Section 544(b), the strong arm power, under which the Trustee is suing in this case, allows a Trustee to avoid a transfer of property "that is voidable under applicable law by a creditor holding an unsecured claim that is allowable . . ."  Section 544(b) does not specify the period of vulnerability by reference to a time frame dependent on the filing of the petition.  Rather, the period of vulnerability is specified by the "applicable law" that pertains to the creditor into whose shoes the Trustee steps in exercising the strong arm power.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In our case, the Trustee has specified Cal. Civ. Code §§ 3439.04(a), 3439.07, and 3439.09(a) and (c) as the applicable law pertinent to his avoidance actions.  Section 3439.04(a) distinguishes between transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor" (Subparagraph (1)), and transfers made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." (Subparagraph 2).

Section 3439.09(a) dictates the period of vulnerability for transfers allegedly avoidable under Section 3439.04(a)(1), i.e. transfers made with actual intent to hinder delay or defraud.  The period is keyed to the date an action is brought to avoid the transfer or a levy is made on the transferred property.  The claim is extinguished if no such levy is made or action is brought within 4 years of the transfer.  However, the period is extended for "one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  If that were where the statute ended, the period of vulnerability could be limitless.  However, Section 3439.09(c) states that "[n]otwithstanding any other provision of law, a cause of action under this chapter with respect to a transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

Some courts have interpreted Section 3439.09(a) as a statute of limitations, rather than defining the period of vulnerability.  However, many courts have held that Section 3439.09(c) as a statute of repose.  The distinction is significant because a statute of limitation bars the claimant from enforcing its claim in court, but it does not extinguish the claim itself.  A statute of repose extinguishes the claim as well as the right to enforce it in court.  A statute of limitations is a protection mainly for the potential defendant.  A statute of repose has an additional public purpose, it is not just a private protection.  A statute of repose, particularly in the context of avoidable transfers, facilitates the free transfer of title to property and protects

1
2
3

those who insure such title by extinguishing claims to avoid any transfer made more than 7 years

before it is attacked.  A statute of limitations is subject to equitable tolling.  A statute of repose is

not.  Moreover, a defined period of vulnerability is not subject to tolling.

4
5
6
7
8
9
10
11
12
13

      Prominent among the cases that discuss the interplay of Sections 544 and 546

of the bankruptcy code, and Section 3439.09 of the California Civil Code is *In re EPD Inv. Co.,*

*LLC*, 523 B.R. 680 (B.A.P. 9th Cir. 2015).  In that case, the Court resolved what it saw as a

conflict between the limitations period specified in Section 546 and the limitations period

specified in Section 3439.09.  The Court held that Section 546 preempted the period specified

under State law, which was essentially tolled once a bankruptcy petition was filed.  If the time to

file a complaint to avoid a transfer under State law had not expired when the petition was filed,

then the Trustee had two years to file a complaint under Section 544 and the look back period

started from the date of the petition, not the filing of the complaint.  Dozens of bankruptcy court

decisions have subsequently followed the analysis set forth in *EPD*.

14
15
16
17
18
19
20

      However, the Ninth Circuit has spoken on this topic only twice, and in

unpublished opinions.  First in *In re Slatkin*, 222 F. App'x 545 (9th Cir. 2007)("*Slatkin*

*I*")(Before: ALARCÓN, HALL, and PAEZ, Circuit Judges.  and next in *In re Slatkin*, 243 F.

App'x 255 (9th Cir. 2007)("*Slatkin II*")( Before: SILVERMAN and CALLAHAN, Circuit

Judges, and ROBART, District Judge).  Curiously, the two decisions come to opposite

conclusions.  In *Slatkin I* the Ninth Circuit held that the period of vulnerability is measured from

the date of the complaint.

21
22
23
24

        "The bankruptcy court erred in measuring the seven-year claims

        from the date Slatkin filed for bankruptcy protection rather than

        the date the Trustee filed the complaint to avoid the fraudulent

        transfers."

25

*Slatkin I*, 222 Fed. Appx. 545, 547 (9th Cir. 2007).

26
27

      As the legislative comments (which were cited by the Ninth Circuit in the

*Slatkin I* opinion) state, "the statutory **periods [plural]** prescribed by the section bars the right

28

and not merely the remedy." Thus not only does the seven year limit date from the filing of the

complaint, so too do the four year limit and the one year exception.

        *Slatkin II* came to the opposite conclusion. Holding that the filing of the

complaint and the effect of Section 546 was to toll or extend the time to avoid the transfers for

two years from the filing of the petition.

        The problem with *EPD, Slatkin II* and the cases that agree with their analysis

is that Section 546 is not a tolling statute, and Section 3439.09 is not a statute of limitations.

Rather Section 3439.09 specifies the period of vulnerability for the avoidance of certain

transfers. There is no conflict between Section 546 and Section 3439.09, just as there is no

conflict between Section 546 and Sections 547 and 548. Section 546 sets the time limit for filing

certain types of avoidance complaints. Sections 3439.09, 547 and 548 specify the periods of

vulnerability for different types of avoidable transfers. Section 108 of the bankruptcy code

provides for tolling the time limits for certain actions. It extends the time within which a trustee

may file certain types of action until two years after the order for relief. But Section 108 does

not apply to avoidance actions because the Trustee is not pursuing an action that could have been

filed by the debtor. Rather he is stepping into the shoes of alleged creditors and suing pursuant

to Section 544(b).

        This Court should follow *Slatkin I* and hold that the Trustee can only pursue

transfers that occurred within 7 years of the filing of the complaint in this action. All of the

Transfers made to Davis occurred more than 7 years after the filing of this complaint, thus giving

Davis a complete defense.

## IV.    CONCLUSION

        Defendant Andrew Davis is an individual who received $60,000.00 from the Debtor in

payment for his services as a race car driver for Michael Avenatti. Davis is an innocent bystander to the

mess that Avenatti made of his law practice. The money he was paid is a drop in the bucket compared to

the total revenues that flowed into and out of EA over the years. EA did not pay Davis $60,000.00 in an

effort to hide its assets from its creditors. The Trustee cannot provide admissible evidence that the

Transfers were made with actual intent to hinder, delay or defraud creditors. The Trustee cannot defeated

Davis's good faith defense. Davis provided reasonably equivalent value to EA for the Transfers. The

Trustee's claims are stale. Judgment should be entered for Davis.

Dated: April 13, 2022                    CHRISTOPHER L. BLANK, ATTORNEY AT
                                         LAW, PC

                                         By: /s/ Christopher L. Blank
                                             CHRISTOPHER L. BLANK
                                             Attorney for Defendant ANDREW S. DAVIS

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  4675 MacArthur Court, Suite 550, Newport Beach, California 92660.

A true and correct copy of the foregoing document described as **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 26, 2018 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

8:20-ap-01146-SC Notice will be electronically mailed to:

Christopher L Blank on behalf of Defendant Andrew S. Davis
chris@chrisblanklaw.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Jack A. Reitman on behalf of Plaintiff Richard A. Marshack
jareitman@landaufirm.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com

John P. Reitman on behalf of Plaintiff Richard A. Marshack
jreitman@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com

Monica Rieder on behalf of Interested Party Courtesy NEF
mrieder@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I   served   the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/13/2022 | CHRISTOPHER BLANK | /s/ Christopher L. Blank |
|-----------|-------------------|--------------------------|
| Date | Type Name | Signature |